DECISION
Presently before the Court is Thomas Connelly's ("Appellant") appeal from a Personnel Appeal Board's ("Board") decision affirming in part disciplinary action brought against him by his employer, the Department of Children, Youth and Families ("DCYF"). The appeal is filed pursuant to R.I.G.L. § 42-35-15 of the Administrative Procedures Act.
 Facts/Travel
The Appellant is employed by the State of Rhode Island through DCYF as a Juvenile Program Worker at the Rhode Island Training School. He is a classified employee with over twenty years of state service. He has been employed by the Training School since approximately December of 1990, and prior to the instant matter, had not been previously disciplined. DCYF, as part of its obligations pursuant to R.I.G.L. § 42-72-1 et. seq., is charged with the custody and rehabilitation of juvenile offenders incarcerated at Rhode Island Training School. The Board is established pursuant to R.I.G.L. § 33-3-6 under the jurisdiction of the Department of Personnel Administration and is empowered pursuant to R.I.G.L. §36-4-42 to review actions of an appointed authority such as DCYF.
On March 24, 1997, Mark Gradilone, a former Training School resident, attempted to escape from the Youth Correctional Center of the Training School. Mr. Gradilone escaped from Building No. 3, designated as the maximum security facility, but was unable to escape from the Training School grounds. The incident occurred during the Appellant's shift in that building while working with two other Juvenile Program Workers. As a result of the attempted escape, DCYF found that the Appellant violated Policy No. 800, entitled "General Security Procedure," and Policy No. 708, entitled "Use of Portable Radios." He was subsequently suspended thirty (30) days by a letter dated June n4, 1997.
He applealed to the Board by letter dated June 30, 1997, and evidentiary hearings were held on November 10, 1998; December 29, 1998; February 6, 199; and May 27, 1999. On February 1, 2000, the Board found that the thirty (30) day suspension was not appropriate in light of the facts and circumstances and reduced the Appellant's suspension to fifteen (15) days. The current appeal to this Court was then filed on February 28, 2000.
 Standard of Review
Rhode Island General Laws § 42-35-15 confers appellate jurisdiction in Superior Court to review the decisions of the numerous state administrative agencies. The general scope of that review is found in § 42-35-15 (g), which states:
 "(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if findings, interference's, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
In conducting its review, the Superior Court is limited to "an examination of the certified record to determine if there is any legally competent evidence therein to support the agency's decision." See Johnston Ambulatory Surgical Associates, Ltd. v. Nolan, 755 A.2d 799, 804-05 (R.I. 2000) (citing Barrington School Committee v Rhode Island State Labor Relations Board, 608 A.2d 1126, 1138 (R.I. 1992)). "[T]he Superior Court may not, on questions of fact, substitute its judgment for that of the agency whose action is under review, even in a case in which the court `might be inclined to view the evidence differently and draw inferences different from those of the agency'". Id. at 805 (citing Rhode Island Public Telecommunications Authority v. Rhode Island State Labor Relations Board, 605 A.2d 479, 485 (R.I. 1994)). "If there is sufficient competent evidence in the record, the court must uphold the agency's decision." Id. (citing Barrington School Committee, 608 A.2d at 1138).
 Personnel Appeal Board Decision I
The Appellant initially argues that the decision of the Board is clearly erroneous in that there is no reliable evidence in the record that the Appellant breached any existing policy or procedure that would warrant the imposition of discipline. Specifically, the Appellant asserts that the testimony of Mark Gradilone, the resident who attempted to escape, is unreliable and contradictory and does not support the conclusions made by the Board. The Appellant also states that the testimony of the Unit Manager, Joseph Cardin, is immaterial to the proof of the alleged conduct of the Appellant. Furthermore, the Appellant declares that there is no evidence of any misuse of the portable radio, and that Building No. 3 was itself not secure and in poor repair.
DCYF argues that there is competent evidence in the record that supports the Board's finding and conclusion that the Appellant violated Training School policies relating to security and control. It also notes that the Board's decision to impose a fifteen calendar day suspension upon Thomas Connelly was reasonable and also supported by competent and probative evidence. DCYF argues that in light of the totality of the evidence, including the testimony from Mr. Gradilone, Mr. Cardin and Mr. Hurlbut, the Board's decision was warranted and justified given the gravity of the situation.
In its decision, the Board referred to the witness testimony of Mark Gradilone, the former Training School resident who attempted to escape on the night of March 24, 1997; Joseph Cardin, Unit Manager of the Youth Correctional Center at the Training School; Dennis Montaquila, a juvenile Program Worker (JPW) assigned to Building No. 5 the night of March 24, 1997; and Warren Hurlbut the Acting Superintendent at the Training School. The Board noted that "[a]lthough Mr. Gradilone's testimony was at times contradictory, it is clear that [he] escaped from Building No. 3, and it is also clear that Mr. Gradilone had in his possession a JPW radio when he was captured in the administration building." Board Decision, p. 18. Based upon the facts and the testimony of the witnesses, the Board found "(1) that Mr. Gradilone escaped from Building No. 3, (2) that he had a JPW security radio in his possession, (3) that policy requires close control of the radio, and (4) that policy requires that all JPW's in Building No. 3 exercise supervision and control over the residents and the radios." Board Decision, p. 18.
The Rhode Island Supreme Court has often stated that "[a] court must not substitute its judgment for that of the agency in regard to the credibility of the witnesses or the weight of the evidence concerning questions of fact." See Costa v Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v R.I. Conflict of Interest Commission,509 A.2d 453, 458 (R.I. 1986). An administrative decision, however, can be vacated "if it is clearly erroneous in view of the reliable, probative, and substantial evidence contained in the whole record." Newport Shipyard, Inc. v. Rhode Island Commission for Human Rights,484 A.2d 893 (R.I. 1984). Substantial evidence is that which a "reasonable mind might accept to support a conclusion." Id. at 897. (quoting Caswell v George Sherman Sand Gravel Co., 424 A.2d 646, 647 (1981)).
Upon review, it is the opinion of this Court that the record contains substantial, reliable and competent evidence to support the conclusions of the Board. The Board noted initially in its opinion that Building No. 3 is a high security building that has three Juvenile Program Workers on duty because of the high risks and violent nature of the offenses committed by its residents[1]. Based upon the testimony of Joseph Cardin and the classification description of a Juvenile Program Worker, the Board pointed out that the general duties of a Juvenile Program Worker such as the Appellant are "[t]o provide for the custody, supervision and security of youth detained in Rhode Island Training School for Youths, including assisting in the rehabilitation, education, treatment, care and control of these residents and to do related work as required." Specifically, the classification description states as an example of work that a Juvenile Program Worker is "to be responsible for the maintenance of discipline and order and to enforce compliance of rules and regulations regarding security" and is "to take prompt and decisive action in cases of emergency, such as escape or riot."
The Board also found sufficient evidence to find that the Appellant violated policy 708 regarding control of the portable radios. Policy 708 specifically states that the "[p]ortable radios are not to be given to residents or left unattended at any time." The facts and testimony presented to the Board revealed that Mr. Gradilone had in fact obtained a Juvenile Program Worker's security radio. How he obtained this radio was based in part from the testimony given from Mr. Gradilone himself. The Appellant argues that his testimony is contradictory and should therefore be disregarded. The Board, however, was certainly cognizant that the testimony given by Mr. Gradilone was at times contradictory.
Nonetheless, after hearing each party's version of how Mr. Gradilone escaped and obtained the radio, the Board found that it was uncontradicted that he did in fact have a radio on him when he was apprehended. The board obviously found certain accounts of Mr. Gradilone's version of how he escaped and obtained a radio more plausible, notwithstanding his contradictions or motives, in order to support its conclusions regarding the Appellant. Moreover, the Board noted that the Appellant's written report does not explain how Mr. Gradilone was able to escape or obtain a radio. The fact that the Board chose to give more or less weight to certain testimony presented to DCYF or the Board is certainly within its authority, and this Court shall not substitute its opinion on review.
The Board's decision was based upon testimony and facts in which a reasonable person could rely in order to reach its conclusions. See Newport Shipyard, Inc. v. Rhode Island Commission for Human Rights,484 A.2d 893 (R.I. 1984). The reduction from the 30 day suspension to the 15 day suspension was also reasonable. The Board took into account the Appellant's excellent employment record and the inherent inadequacies of the building to support a maximum control facility, but also considered that a potentially dangerous resident was allowed to escape.
 II
The Appellant next argues that the decision of the Board is in violation of constitutional or statutory provisions, affected by other error of law, and is arbitrary and capricious and characterized by an abuse if discretion. In particular, the Appellant maintains that it was fatal error of the Board to find that Policy 848 was not in effect in its entirety at the time of the accident, that there was spoliation of evidence, that there was a violation of the best evidence rule, and that there was a failure to disclose exculpatory evidence. DCYF argues that the Appellant's argument concerning the best evidence and DCYF's alleged failure to disclose exculpatory evidence.
The Board also responded to the Appellant's argument that a Juvenile Program Worker while working at the control center post is not responsible for the supervision of any residents. The Appellant argues that Policy 848, which states that a worker at the control center post is not responsible for residents, was still in effect at the time of the incident. In support of its determinations, the Board noted that Joseph Cardin testified that the policy in place for Building No. 3 at the time of the incident was that control center posts did have supervisory duties over residents. Mr. Cardin also testified that he had notified the Juvenile Program Workers of that policy in writing and verbally, and that the particular design of Building No. 3 nonetheless required that all staff be involved in supervision of the residents at all times. Both Mr. Cardin and Mr. Hurlbut testified that all three Juvenile program Workers in Building No. 3 had responsibility for the supervision and control of residents. The Board accepted the testimony of the witnesses, and this Court can find no reason to disregard the testimony of Mr. Cardin, nor can it find a reason why the Board should not have relied on his testimony while making its determinations.
The testimony from Mr. Cardin and Mr. Hurlbut is both relevant and material in that it assists the Board in understanding the responsibilities of the Juvenile Program Workers and the structural components of the maximum security facility at the time of the incident. Also, as stated earlier, it is not for this Court to substitute its judgment for that of the Board's "in regard to the credibility of the witnesses or the weight of the evidence concerning questions of fact ." See Johnston Ambulatory Surgical Associates, Ltd. v. Nolan, 755 A.2d 799, 804-05 (R.I. 2000); Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of interest Commission,509 A.2d 453, 458 (R.I. 1986).
Furthermore, the Board noted that even if it found that the Appellant had not been specifically instructed in writing or even verbally that Policy 848 was not in effect or had been rescinded, "the JPW on duty in the control center in the configuration as set up in Building No. 3, especially an experienced JPW such as the Appellant, should have realized that he bore joint responsibility for the security of the residents and the security equipment such as radios." Hence, it was partly the opinion of the Board, based upon the testimony from Mr. Cardin and Mr. Hurlbut, that the Appellant was responsible for the residents whether or not Policy 848 was in effect. The Board found that the Appellant should have known his responsibilities given the building configuration and the fact that it was a maximum security facility with potentially dangerous residents. This determination by the Board was neither unconstitutional, nor an error of law. It was merely a finding of fact based upon the circumstances of the case and the testimony that was given during the hearings. Again, it is not for this Court to substitute its judgment for that of the Boards or DCYF regarding questions of fact. See Johnston Ambulatory Surgical Associates, Ltd. v. Nolan, 755 A.2d 799, 804-05 (R.I. 2000).
Lastly, the Appellants arguments regarding the best evidence rule, spoliation of evidence, and exculpatory evidence are unavailing. The conclusions of the Board were not based upon any one document or event, but rather the totality of the circumstances. It took into account not only the testimony of the various witnesses, but it also reviewed and considered the structural limitations of Building No. 3, the responsibilities and experience of the Appellant and other Juvenile Program Workers, and the fact that Building No. 3 was a maximum security facility. Furthermore, the Appellant had ample opportunity to be heard and to present evidence in support of his case.
This Court finds that the decision of the Personnel Appeal Board was not clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. It was also made upon lawful procedure and not in violation of constitutional or statutory provisions. Therefore, for the reasons stated above, the Appellant's appeal is denied and the decision of the Personnel Appeal Board is affirmed.
Counsel shall submit the appropriate judgment for entry.
[1] Mark Gradilone himself was a high risk resident with a past history of attempted escapes and violent behavior.